## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ANTONIO WARD,                *

      **Plaintiff**             *

v.                         *

WAL-MART STORES, INC., *et al*.    *        CIVIL No. JKB-13-1011

      **Defendants.**       *

                            *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM

Antonio Ward ("Plaintiff") brought this suit against Wal-Mart Stores, Inc. ("Walmart") and Officer Danielle Barber (identified as Badge No. 5241 in the Baltimore County Police Department) ("Barber" and, collectively with Wal-Mart, "Defendants") alleging deprivation of rights, pursuant to 42 U.S.C. § 1983, as well as violations of state common law and of state constitutional rights. (Am. Compl., ECF No. 14.) Now pending before the Court is Defendant Barber's motion to dismiss (ECF Nos. 18) and Defendant Wal-Mart's motion to dismiss (ECF No. 20).[1]

## I.    BACKGROUND[2]

On April 4th, 2012, at approximately 6:30 p.m., Plaintiff went to the Walmart store in Arbutus, MD to purchase an accessory for his mobile phone. (Am. Compl. at ¶¶ 7, 8.) Having just completed his daily physical workout, Plaintiff was wearing athletic apparel. (*Id.* at ¶ 9.) When he entered Walmart, he walked to the wireless cell phone center located near the front of

---

[1] Defendant Wal-Mart's prior motion to dismiss (ECF No. 5) was rendered moot by Plaintiff's filing of an amended complaint (ECF No. 14).
[2] The facts are recited here as alleged by the Plaintiff, this being a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

the store. (*Id*. at ¶ 10.) Once there, he found a store representative and explained to him what he was looking to purchase. (*Id.*) In addition, because he was perspiring, he asked the employee if he could have a plastic cover so that he could sit without "soil[ing]" the "customer seat." (*Id.*) However, the employee ignored Plaintiff's requests. Instead, reacting to the fact that Plaintiff was "perspiring onto the floor," he turned to a co-worker, whom he referred to as Donna, and asked her if she could have maintenance come to clean the liquid from the floor. (*Id.*)

The co-worker left the wireless cell phone center and returned a short time later with Defendant Barber, who was wearing her police uniform, and four other Walmart employees, including one who identified himself as an Assistant Manager. (*Id.* at ¶¶ 11, 15.) None of them was a "maintenance employee." (*Id*.) In a loud voice, Barber told Plaintiff: "You urinated on the floor." (*Id.*) For several minutes, she continued to berate Plaintiff and to accuse him of urinating on the floor, while threatening him with arrest. (*Id.*) In addition, Defendant Barber asked Plaintiff whether he had any money to buy a charger "or to justify his presence in the store." (*Id.*) At the time, Plaintiff had $300 in cash, as well as a debit card and several credit cards. (*Id.*) Defendant Barber's remarks were overheard by several patrons. (*Id.*)

Shortly thereafter, Officer D.J. Yirka of the Baltimore County Police Department ("Yirka"), as well as an individual who identified himself as the store manager, arrived. (*Id*. at ¶ 13.) The manager told Plaintiff he had to leave the store. (*Id.*) Then, at the request of both the manager and Defendant Barber, Yirka ordered Plaintiff to leave the store, threatening him with arrest if he didn't comply. (*Id.*)

Plaintiff filed his initial complaint with this Court on April 4, 2013 (ECF No. 1) and filed an amended complaint on October 9 (Am. Compl.). Defendants Barber and Walmart filed their

instant motions to dismiss on October 21 (ECF No. 18) and October 29 (ECF No. 20), respectively.

## II.    LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. *Bell Atl. v. Twombly*, 550 U.S. 544, 556-57 (2007). In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 556 U.S. at 679.

## III.    ANALYSIS

### a.    Count I—Deprivation of Civil Rights, 42 U.S.C. § 1983

Plaintiff alleges that "[a]s a direct and proximate result of the actions of defendant Barber, Antonio Ward suffered an unlawful seizure in that he was illegally detained and forced to leave an establishment open to the public outside the parameters of law and decency." (Am. Compl. at ¶ 16.) The Court notes that only Defendant Barber—and not Walmart—is named in Count I.

A claim under 42 U.S.C. § 1983 has four requirements: "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused, (3) by the conduct of a person (4) who acted under color of any statute, ordinance, regulation, custom or usage, of any State . . . ." 1 Martin A. Schwartz, *Section 1983 Litigation: Claims and Defenses* § 1.04[A] (4th ed. 2013 suppl.) (collecting cases).

With regard to the first element, Plaintiff alleges that he suffered an "unlawful seizure." As the Fourth Amendment provides an explicit source of textual protection against government seizure, it provides the frame of analysis for Plaintiff's claim that he was "illegally detained and forced to leave an establishment open to the public." *See Graham v. Connor*, 490 U.S. 286, 395 n.10 (1989).

In establishing whether or not Defendant Barber's threat to arrest Plaintiff gave rise to a "seizure" under the Fourth Amendment, the "crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)). Addressing a case in which a police officer ordered a patron at a restaurant to leave or face arrest, the Seventh Circuit noted: "We may assume that an order by the police along the lines of 'Do X or be taken into custody' requires the same sort of justification that custody itself requires—that is, depends on probable cause to believe that the person has committed a crime." *Schlessinger v. Salimes*, 100 F.3d 519, 522 (7th Cir. 1996). *But see Brown v. Sweeney*, 526 F. Supp. 2d 126, 132-133 (D. Mass. 2007) ("Generally, a mere oral threat of an arrest by a police officer absent any other factual allegations does not constitute . . . a 'seizure.'") (collecting cases).

Here, the Court finds that, based on Plaintiff's allegations, any threat to arrest Plaintiff if he failed to leave the store was justified. Indeed, it is a well-settled principle that "if premises are open to the public, the occupants of those premises have the implied consent of the owner/lessee/possessor to be on the premises, and that consent can be revoked only upon some showing the occupants have committed acts sufficient to render the implied consent void." Further, "[e]vidence that a defendant refuses to leave a store after he is asked to leave is sufficient to sustain a conviction for criminal trespass." 75 Am. Jur. 2d Trespass § 165; *see also* Md. Code Ann., Crim. Law § 6-409(b) ("A person may not refuse or fail to leave a public building or grounds, during regular business hours if: . . . (1) . . . the person . . . (ii) is acting in a manner disruptive of and disturbing of the conduct of normal business; and (2) an authorized employee of the government unit asks the person to leave."); *United States v. Ambrose*, 942 A.2d 755, 761 (Md. 2008) (citing the principle that that the use of the parking area of a shopping center, *like the shopping center itself*, "is limited to those persons who have implied permission to do business with the owner, and that the owner retains the right to exclude anyone at anytime.")

Here, according to Plaintiff's own allegations, he was perspiring so profusely that his bodily secretions pooled on the floor. (Am. Compl. at ¶ 10. "In response to plaintiff perspiring onto the floor. . . .") Further, he himself "advised [an employee] that since he was perspiring, it might be advisable to provide him with a plastic cover for the customer seat so that it would not get soiled." (*Id.*) As a result, it was entirely reasonable for Walmart, through the action of its agents, Defendant Barber and the store manager, to revoke Plaintiff's license to be present in the store.[3] (*Id.* at ¶¶11, 13.) Further, because Walmart revoked its consent to allow Plaintiff in its

---

[3] The Court notes that Plaintiff has not alleged that his vigorous perspiration was the result of a disability and has not claimed that he was excluded by reason of any disability. 42 U.S.C. §§ 12131(1), 12132.

store, it was reasonable for Defendant Barber, as well as Officer D.J. Yirka, to threaten Plaintiff with arrest if he refused to leave the store. Indeed, had Plaintiff refused to leave, Barber and Yirka would have had probable cause to believe Plaintiff was criminally trespassing.

Admittedly, there was some confusion among Walmart employees as to the exact nature of Plaintiff's bodily secretions. In particular, Defendant Barber accused Plaintiff of urinating on the floor rather than merely perspiring onto it. (*Id.* at ¶ 11.) However, whether the pool was one of perspiration or one of urine is of no moment.[4] Plaintiff's physical state was such that it was disruptive of and disturbing of the conduct of normal business. Walmart was well within its rights to ask Plaintiff to leave and Defendant Barber did not violate Plaintiff's Fourth Amendment rights when she threatened to arrest Plaintiff if he failed to comply. Therefore, Count I of Plaintiff's Amended Complaint shall be dismissed.

### b. Plaintiff's State Law Claims

The doctrine of supplemental jurisdiction provides that in any civil action over which a federal district court has original jurisdiction, the court also has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, a district court may decline to exercise supplemental jurisdiction in certain instances, including cases where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367.

Trial courts enjoy "wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995). Among the factors that inform this discretion are "convenience and fairness

---

[4] For the purposes of this motion to dismiss, the Court accepts Plaintiff's allegation that he was, in fact, perspiring and not urinating. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.*

Here, Plaintiff's remaining claims are state law claims: negligent supervision (Count II), defamation (Count III), and a claim under the Maryland Declaration of Rights (Count IV). (Am. Compl.) Further, Plaintiff has not pled facts to support diversity jurisdiction. 28 U.S.C. § 1332. Having considered the factors set forth in *Shanaghan*, the Court will exercise its discretion and dismiss Plaintiff's remaining claims.[5] The Court notes that this case is still at an early stage and that discovery has not yet begun. Further, Plaintiff is free, if he chooses, to pursue these claims in state court.

## IV.     CONCLUSION

Accordingly, an order shall issue (1) GRANTING Defendant Barber's motion to dismiss (ECF No. 18) as to Count I; (2) DISMISSING Count I of Plaintiff's amended complaint (ECF No. 14); and DECLINING to exercise supplemental jurisdiction over the state law claims asserted against Defendants.

Dated this <u>22nd</u> day of January, 2014.

BY THE COURT:

_____/s/_____

James K. Bredar
United States District Judge

---

[5] The Court notes that this action was filed exactly one year after the alleged incidents and that in Maryland the statute of limitations for defamation is one year from the date of accrual. Md. Code Courts and Judicial Proceedings § 5–105. However, Plaintiff will not be prejudiced by the Court's decision to decline supplemental jurisdiction because the period of limitations of Plaintiff's defamation claim shall be tolled until 30 days after the present dismissal. 28 U.S.C. § 1367(d); *see Turner v. Kight*, 957 A.2d 984, 990 (holding that "upon dismissal of the pendent claims, the plaintiff would have whatever time was left under the State statute of limitations when the action was filed in Federal court plus 30 days.")